Stinson v. Rouse.

———————◆———————

SAMUEL G. STINSON *versus* JAMES ROUSE.

R. S., c. 76, § 3, provided that the appraisers, in the levy of an execution on real estate, shall, " in a return made and signed by them on the back of the execution, state the nature of the estate and its value, and whether it is in severalty or in common, a fee simple or less estate, in possession, reversion or remainder, and describe it by metes and bounds," &c.

Where the appraisers return that they "*appraised*".at a sum named, "*a certain lot of land*" described by metes and bounds, and shown to them " as the property of" the debtor, which he " *held in fee simple and severalty,*"

although the language is not certain to every intent, it states with sufficient certainty that the debtor owned and held, and that they appraised, the entire property in the lot of land, present, and future.

Chapter 165 of the Public Laws of 1863 cannot affect levies made prior to its passage.

On Report from *Nisi Prius*, Dickerson, J., presiding. Writ of Entry.

The only question raised was as to the sufficiency of the appraisers' return on a levy of an execution upon real estate.

So much of the return as is material was as follows:—

"*April* 26, 1860. We, the subscribers, being duly chosen to appraise such real estate," &c., "have viewed and examined, in company with the officer having the execution," &c., "the following described land, viz., a certain lot of land, situated," &c., "*held* by the said" debtor "*in fee simple and in severalty*, and bounded as follows." (Here follows a description by metes and bounds.) "Said lot of land being shown to us by" the attorney of the creditor "as the property of" the debtor; "and we have appraised said lot of land at the sum of," &c.

*Jacob Smith*, for the plaintiff, argued—

That the return of the appraisers was a sufficient compliance with R. S., c. 76, § 3.

If not, c. 165 of the Public Laws of 1863, amendatory of the former statute, cured the defect.

*Evans & Putnam*, for the defendant, contended—

That the appraiser's return does not state whether the estate set off was "in possession, reversion or remainder."

The statute of 1840 simply required that the estate might be described in any way to identify it.

Act of February, 1863, is prospective.

R. S., c. 76, § 3, distinctly requires that the appraisers shall *state* whether the property is "in possession, reversion or remainder," in addition to the other matters required to be stated. Where a statute gives no special directions as

to the form of a return, a substantial compliance will be sufficient, though not certain to every intent. But where, in a statute proceeding, the statute distinctly requires certain things to be "*stated*," it is otherwise.

The words "possession, reversion or remainder," do not occur in the appraisal, and they are neither implied or inferred from anything stated, unless in the words, "*held by said William Winslow in fee simple.*"

It is not implied in the word "*held*," which, as a legal term, is equally applicable to all "*tenements*," corporal, incorporeal, in possession, remainder or reversion. It is the common language of the books that "*tenements*" includes everything that may be holden.

Nor is it implied in the words "fee simple." It is a significant fact that the statute follows the analytical order of Blackstone's Commentaries, book 2, p. 103, requiring the appraisers to state the "*quantity* of interest," "the time when that quantity of interest is to be enjoyed," and the "*number* and *connections* of the co-tenants."

The words "*fee simple*" relate entirely to the *quantity* of interest, and not at all to the *time* of enjoyment. The whole analytical arrangement of Blackstone is based on this idea.

"Tenant in fee simple is he that hath lands, tenements or hereditaments, to hold to him and his heirs forever." Ibid, p. 105. The distinctive feature is that the estate is to him and his heirs "*generally*, absolutely and simply."

That feature is equally applicable to estates in reversion and remainder, as to estates in possession; and such estates may be not only life estates, or estates tail, but also to a man and his heirs, "generally, absolutely and simply." See, also, Ibid, pp. 107 and 177.

The opinion of the Court was drawn by

DAVIS, J.—By the statute of 1821, c. 60, § 27, appraisers of real estate set off on execution, were required to

"describe the same with as much precision as the nature and situation thereof will admit of."

This provision was made more specific by the Revised Statutes of 1841, c. 94, § 7; — "The nature of the estate appraised, (whether in severalty or undivided, a fee simple or less estate, in possession, reversion, or remainder,) shall be described either by metes and bounds, or such other mode that the same may be distinctly known and identified."

There were no parenthetical marks in the statute; but the language was obscure, or susceptible of two interpretations; and the Court construed that part enclosed in brackets as a parenthesis, leaving nothing necessary to be described but "the nature of the estate appraised." *Roop* v. *Johnson*, 23 Maine, 335.

But the provision in the R. S. of 1857, c. 76, § 3, is neither obscure, nor of doubtful construction. It requires the appraisers "to state in their return the nature of the estate and its value, *and* whether it is in severalty or in common, a fee simple or a less estate, in possession, reversion, or remainder, *and* describe it by metes and bounds, or in such other manner," &c.

There does not appear to have been any other change in the statute which rendered the amendment of this section necessary. By the former, as by the latter revision, the debtor's interest passed by the levy, though *less* than the estate described by the appraisers. And, under both alike, the creditor might waive the levy, even after it was recorded, and by *scire facias*, obtain a new execution, "if the estate levied upon was not the property of the debtor."

Whether any case ever arose in which it was found impossible to ascertain definitely what estate had been levied upon, whether in severalty or undivided, a fee simple or less estate, and whether in possession, reversion, or remainder, for the reason that the return of the appraisers was silent on these points, we are not informed. It is apparent that such a difficulty might have occurred. An extent by virtue of an execution upon a lot of land, by metes and

bounds, is not necessarily a levy upon the entire property in the land. The appraisers are to fix the value of the *debtor's interest* in the premises; and their return should state what that interest is, otherwise we cannot tell what they do appraise, whether the entire property in the land, or a reversion or remainder, an estate for life or a term of years. If they appraise an interest or estate *less* than the debtor owns in the land, except in some cases specially provided for by statute, the levy is void. If they appraise an interest *greater* than the debtor owns, except in case of a mortgage, for which special provision is made, the creditor may affirm the levy, and hold the debtor's interest by it, or he may waive it, as before stated. In either case it may be important that the return should show exactly what interest or estate was appraised.

Whether the Legislature changed the statute in 1857 for any such reasons as we have suggested, we do not know. The language, as amended, is unequivocal and imperative in its terms; and all levies made while it was in force which are not substantially according to its provisions, must be held to be void.

It is argued that such levies may be sustained by c. 165 of the laws of 1863, which repeals these provisions of the statute of 1857, and restores those of 1841, as construed by the Court. The wisdom of these repeated changes may well be doubted. It is very important that statutory provisions which direct the forms of civil proceedings, and largely affect titles to real estate, should be permanent. A slight change which, though well enough in itself, is of very little importance, may work great mischief.

But the statute of 1863 cannot affect this case. It does not claim to affect levies previously made. And, if it had, it would have made no difference. The owner of land does not lose his title by a void levy; nor can the Legislature divest him of it, by undertaking to make such a levy valid.

The appraisers' return, in the case at bar, is fuller than

such returns usually have been. Does it state all the particulars required by the statute?

It appears by the return that the estate was "held by the debtor in severalty." Then it was not "in common" with any other person. It also appears that he held it "in fee simple." Therefore it was not "a less estate."

It does not appear by the return that it was a "reversion," or a "remainder." Does it appear that they appraised the *entire property* in the land, so that it was an estate "in possession?" By this is meant, not that the debtor himself *occupies* the land. He may be in possession by a tenant, who will have to attorn to the creditor after the levy. Every estate is *in possession*, within the meaning of the statute, when the present interest in the use and occupation is in the debtor. It may be an estate for years, or for life; or it may be the entire interest in, and title to the land, present, and future.

The return states that they appraised "a certain lot of land" which is described by metes and bounds, which was shown to them "as the property of William Winslow," which he "held in fee simple and in severalty." Although this language is not certain to every intent, in precise technical phrase, we think it states with sufficient certainty that the debtor owned and held, and that they appraised, the entire property in the lot of land, present, and future. A "reversion," or a "remainder," has been said to be "*the residue of the fee,* after a less estate has been carved out of it, both these interests being but one estate." Jacob's Law Dic.; 1 Coke, c. 12, § 215. A fee simple *of the land* is the largest possible estate. 1 Coke, c. 1, § 11. And, though there may be a remainder or a reversion in fee, it is not the entire property, or, in popular language, *the land itself,* that is held in fee in such case, but only the *reversion,* or the *remainder.* A reversion, or a remainder, is described as such, the quality, value, and sometimes the validity, being dependent upon the precedent estate. If the grantor of "a lot of land" should covenant that it was "his property," and "held

by him in fee simple," his title to a reversion or a remainder would not satisfy such a covenant of title. The general description sufficiently excludes the idea of a limited and particular estate.

We think, therefore, that all the requirements of the statute are substantially embraced in the appraisers' return. According to the agreement of the parties the tenant must be defaulted.

APPLETON, C. J., CUTTING, WALTON and BARROWS, JJ. concurred.